# EXHIBIT 1

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

For Prothonotary Use Only (Docket Number)

**FEBRUARY 2018**

**001036**

E-Filing Number: 1802027861

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| THE CITY OF NEW CASTLE | PURDUE PHARMA L.P. |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 230 N. JEFFERSON STREET MUNICIPAL BUILDING NEW CASTLE PA 16101 | ONE STAMFORD FORUM 201 TRESSER BLVD STAMFORD CT 06901 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | PURDUE PHARMA INC. |

| PLAINTIFF'S ADDRESS **RECEIVED** | DEFENDANT'S ADDRESS |
|---|---|
| FEB 28 2018 **Legal Affairs** | ONE STAMFORD FORUM 201 TRESSER BLVD STAMFORD CT 06901 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | THE PURDUE FREDERICK COMPANY INC. |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | ONE STAMFORD FORUM 201 TRESSER BLVD STAMFORD CT 06901 |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 1 | 11 | ☒ Complaint  ☐ Petition Action  ☐ Notice of Appeal ☐ Writ of Summons  ☐ Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | |
|---|---|---|---|
| ☐ $50,000.00 or less  ☒ More than $50,000.00 | ☐ Arbitration  ☐ Jury  ☐ Non-Jury  ☒ Other: CLASS ACTION | ☐ Mass Tort  ☐ Savings Action  ☐ Petition | ☐ Commerce  ☐ Minor Court Appeal  ☐ Statutory Appeals | ☐ Settlement  ☐ Minors  ☐ W/D/Survival |

CASE TYPE AND CODE

C1 - CLASS ACTION

STATUTORY BASIS FOR CAUSE OF ACTION

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | **FILED PRO PROTHY** FEB 13 2018 **M. BRYANT** | IS CASE SUBJECT TO COORDINATION ORDER?  YES  NO |
|---|---|---|

## TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: THE CITY OF NEW CASTLE

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| DANIEL C. LEVIN | 510 WALNUT STREET, STE. 500 LEVIN SEDRAN & BERMAN PHILADELPHIA PA 19106 |

| PHONE NUMBER | FAX NUMBER |
|---|---|
| (215)592-1500 | none entered |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 80013 | dlevin@lfsblaw.com |

| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
|---|---|
| DANIEL LEVIN | Tuesday, February 13, 2018, 02:18 pm |

FINAL COPY (Approved by the Prothonotary Clerk)

## COMPLETE LIST OF DEFENDANTS:

1. PURDUE PHARMA L.P.
   ONE STAMFORD FORUM 201 TRESSER BLVD
   STAMFORD CT 06901
2. PURDUE PHARMA INC.
   ONE STAMFORD FORUM 201 TRESSER BLVD
   STAMFORD CT 06901
3. THE PURDUE FREDERICK COMPANY INC.
   ONE STAMFORD FORUM 201 TRESSER BLVD
   STAMFORD CT 06901
4. TEVA PHARMACEUTICALS USA, INC.
   1090 HORSHAM ROAD
   NORTH WHALES PA 19454
5. CEPHALON, INC.
   1090 HORSHAM ROAD
   NORTH WHALES PA 19454
6. JOHNSON & JOHNSON
   1 JOHNSON & JOHNSON PLAZA
   NEW BRUNSWICK NJ 08933
7. JANSSEN PHARMACEUTICALS, INC.
   1125 TRENTON HARBOUTON ROAD
   TITUSVILLE NJ 08560
8. ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC.
   ALIAS: N/K/A JANSSEN PHARMACEUTICALS, INC.
   1125 TRENTON HARBOUTON ROAD
   TITUSVILLE NJ 08660
9. JANSSEN PHARMACEUTICA, INC.
   ALIAS: N/K/A JANSSEN PHARMACEUTICALS, INC.
   1125 TRENTON HARBOUTON ROAD
   TITUSVILLE NJ 08560
10. ENDO HEALTH SOLUTIONS, INC.
    1400 ATWATER DRIVE
    MALVERN PA 19355
11. ALLERGAN PLC
    MORRIS CORPORATE CENTER III 400 INTERPACE PARKWAY
    PARSIPPANY NJ 07054

LEVIN SEDRAN & BERMAN LLP
ARNOLD LEVIN, ESQUIRE
DANIEL C. LEVIN, ESQUIRE
CHARLES E. SCHAFFER, ESQUIRE
Identification No. 02280, 80013 & 76259
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500

Filed and Attested by the
Office of Judicial Records
13 FEB 2018 03:18 pm
M. BRYANT

Attorneys for Plaintiff

JURY TRIAL DEMANDED
TWELVE JURORS REQUESTED

COURT OF COMMON PLEAS OF

PHILADELPHIA COUNTY

THE CITY OF NEW CASTLE, on behalf of:
itself and other similarly situated,              :
                                                  :
                    Plaintiff,                    :
            v.                                    :
                                                  :
PURDUE PHARMA L.P.                                :
One Stamford Forum                                :
201 Tresser Boulevard                             :
Stamford, Connecticut 06901                       :
        And                                       :
PURDUE PHARMA INC.                                :
One Stamford Forum                                :
201 Tresser Boulevard                             :
Stamford, Connecticut 06901                       :
        And                                       :
THE PURDUE FREDERICK COMPANY,                     :
INC.                                              :
One Stamford Forum                                :
201 Tresser Boulevard                             :
Stamford, Connecticut 06901                       :
        And                                       :
TEVA PHARMACEUTICALS USA, INC.                    :
1090 Horsham Road                                 :
North Whales, Pennsylvania 19454                  :
        And                                       :
CEPHALON, INC.                                    :
1090 Horsham Road                                 :
North Whales, Pennsylvania 19454                  :
        And                                       :
JOHNSON & JOHNSON                                 :
1 Johnson & Johnson Plaza                         :
New Brunswick, New Jersey 08933                   :
        And                                       :

NO.

**CLASS ACTION COMPLAINT**

2018 FEB 16  A 10: 51

JANSSEN PHARMACEUTICALS, INC.    :
1125 Trenton Harbouton Road      :
Titusville, New Jersey 08560-0200 :
    And                          :
ORTHO-McNEIL-JANSSEN             :
PHARMACEUTICALS, INC. N/K/A      :
JANSSEN PHARMACEUTICALS, INC.    :
1125 Trenton Harbouton Road      :
Titusville, New Jersey 08560-0200 :
    And                          :
JANSSEN PHARMACEUTICA, INC.      :
N/K/A JANSSEN PHARMACEUTICALS,   :
INC.                             :
1125 Trenton Harbouton Road      :
Titusville, New Jersey 08560-0200 :
    And                          :
ENDO HEALTH SOLUTIONS INC.       :
1400 Atwater Drive               :
Malvern, Pennsylvania 19355      :
    And                          :
ALLERGAN PLC                     :
Morris Corporate Center III      :
400 Interpace Parkway            :
Parsippany, NJ 07054             :
                                 :
              Defendants.        :

---

## NOTICE

   You have been sued in court.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff.  You may lose money or property or other rights important to you.

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.**

## AVISO

   Le han demandado a usted en la corte.  Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene viente (20) dias de plazo al partir de la fecha de la demanda y la notificacion.  Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona.  Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion.  Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda.  Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

**LLEVE ESTA DEMANDA A UN ABOGADO IMMEDIATAMENTE.     SI    NO    TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICO.**

Case ID: 180201036

**VAYA EN PERSONA O LLAME PONDIMIN OR REDUX TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.**

PHILADELPHIA BAR ASSOCIATION
Lawyer Referral and Information Service
1101 Market Street, 11th Floor
Philadelphia, Pennsylvania 19107
215·238·6300

ASOCIACIÓN DE LICENCIADOS DE FILADELFIA
Servicio De Referencia E Información Legal
1101 Market Street, 11th Floor
Filadelfia, Pennsylvania 19107
215·238·6300

## CLASS ACTION COMPLAINT

Plaintiff, The City of New Castle ("Plaintiff" or "New Castle") brings this action on behalf of itself and other similarly situated townships, cities, municipalities and other counties against Defendants, Purdue Pharma L.P., Purdue Pharma Inc., The Purdue Frederick Company, Inc., Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Johnson & Johnson, Janssen Pharmaceuticals, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., n/k/a Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Endo Health Solutions, Inc., Endo Pharmaceuticals, Inc., Perry Fine, Scott Fishman and Lynn Webster (collectively, "Defendants") and alleges as follows:

## I.   INTRODUCTION

1.   Plaintiff, like many other cities, municipalities, counties and townships across this country are suffering from severe public health and safety crisis arising out of the unlawful and deceptive marketing and sale of prescription opioids by Defendants.

2.   The deceptive marketing and sale of prescription opioids for medical use in New Castle are responsible for an opioid epidemic addiction.

3.   As a result of the opioid epidemic, Plaintiff has suffered a public health and safety crisis. As a result of the opioid epidemic, Plaintiff has suffered public safety, lack of economic productivity and quality of life in its city. Further, Plaintiff has expended money to contain the epidemic and adverse impacts on public health and safety which has caused it to suffer damages. Further, the opioid crisis has affected the citizens of New Castle resulting in crime, family and social disfunction. The opioid epidemic has caused health consequences to the citizens of New Castle. Finally, the city agencies have been responsible for coping and containing the epidemic crisis by expending unnecessary money to discharge their duties.

Case ID: 180201036

4.      The opioid epidemic has affected New Castle's agencies including police, fire and hospitals which has greatly increased costs to Plaintiff.

5.      The opioid epidemic has also affected the law enforcement authorities which include the criminal justice system, social services, health and municipal agencies.  Plaintiff has been forced to incur substantial costs as a provider of health coverage to its employees, their families and emergency health services as a result of the opioid epidemic.

6.      The costs incurred by Plaintiff are similar to costs that are incurred by cities and municipalities across the country.  The epidemic is directly a result of the commercial activities of Defendants.

7.      The opioid drugs that are prescribed by the Defendants are dangerous and have severe adverse side effects to its users.  The Defendants marketed and promoted the prescription drugs for long-term use to treat chronic pain.  However, the overwhelming weight of medical and scientific authority is that the prescription opioids should not be used for long term treatment or chronic pain.

8.      The opioids include brand name drugs like OxyContin and Percocet and generics like oxycodone and hydrocodone. The oxycodone is derived from properties similar to opium and heroin, and, as such are highly addictive and dangerous and are regulated by the United States Food and Drug Administration ("FDA") as controlled substances.

9.      While opioids provide effective treatment for short-term, post-surgical and trauma-related pain, the Defendants have manufactured, promoted and marketed the opioids for management of pain by misleading consumers and providers regarding their appropriate use. Opioids should not be prescribed for long-term treatment.

10.     Opioids are addictive drugs.  Defendants knew that barring exceptional circumstances, opioids are too addictive and too debilitating for long-term use.

11.     The Defendants knew with prolonged use, the effectiveness of opioids will be outweighed by the risks of side effects and addiction.

12.     Defendants knew of controlled studies where the risks of addiction and adverse outcomes were significantly minimized by prescribing opioids for limited short-term use. Despite this information, Defendants marketed opioids for long-term use creating a false perception of the safety and efficacy of opioids.  Defendants had a highly deceptive marketing campaign that begin in the late 1990's up until 2006.

13.     Defendants were able to convince doctors to prescribe opioids for long-term use even though Defendants were aware of the negative consequences of using opioids for long-term use.

14.     Defendants were aware that opioid use should be short-term because opioids are addictive and debilitating under long-term use.

15.     Plaintiff brings this class action on behalf of Pennsylvania government entities to obtain mandatory injunctive relief, compensatory and punitive damages.  Plaintiff seeks that Defendants cease all promotional activities of prescribing opioids as safe and effective treatment for chronic pain and long term use.

16.     Plaintiff and members of the class also seek actual damages to recover costs of reimbursement of prescription opioids for long-term daily use and the cost of treatment of opioid addiction and other adverse medical conditions associated with long-term use incurred by the class members' health plans and paid directly by it.

17.     Plaintiff and members of the class also seek recovery of its costs of increased medical services directly associated with opioids including increased emergency response costs, increased costs of New Castle law enforcement authorities, its criminal justice system and social and health agencies which are attributable to the long-term use of prescription opioids to treat chronic pain.

18.     Plaintiff brings this action against Defendants for public nuisance, violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law and unjust enrichment.

## II.     JURISDICTION AND VENUE

19.     This Court has jurisdiction over this action pursuant to 42 Pa.C.S. § 931(a).  The amount in controversy exceeds $50,000 exclusive of interest and costs.

20.     Venue is proper in Philadelphia County because Defendants conduct substantial amounts of business in Philadelphia County.

21.     This action is not removable to federal court.  Among other things, there is insufficient diversity for removal.  Plaintiff is not considered a party for purposes of diversity of citizenship, jurisdiction in any event.

## III.     PARTIES

22.     Plaintiff, The City of New Castle is the County Seat in Lawrence County, Pennsylvania.  It is home to approximately 20,000 residents.

23.     The City of New Castle provides a wide range of social services on behalf of the New Castle residents including health related services.  In addition, New Castle provides funding for, including but not limited to, the New Castle Police Department, New Castle Fire Department, New Castle District Attorney's Office, New Castle Defenders Association and Social Services.

24.     Plaintiff still funds its own benefits plan on behalf of its full time employees through which it pays medical costs including cost of treatment, opioid addiction, related disease, etc.

25.     Plaintiff self funds its own worker's compensation and disability plan through which it pays disability costs and related benefits for covered employees.

26.     Plaintiff's health, prescription, workers' compensation and disability plans are administered by third party service providers that are in the business of administrating employee health plan accounts and worker's compensation and disability benefits.

27.     Defendant, Purdue Pharma L.P. ("PPL") is a limited partnership organized under the laws of Delaware with its principal place of business in Stamford, Connecticut.

28.     Defendant Purdue Pharma Inc. ("PPI") is a New York corporation with its principal place of business in Stamford, Connecticut.

29.     Defendant, The Purdue Frederick Company, Inc. ("PFC") is a New York corporation with its principal place of business in Stamford, Connecticut.

30.     PPL, PPI and PFC (collectively, "Purdue") are engaged in the manufacture, promotion, distribution and sale of opioids nationally, in the Commonwealth of Pennsylvania and in Lawrence County, including the following:

*Table 1. Purdue Opioids*

| Drug Name | Chemical Name | Schedule |
|-----------|---------------|----------|
| OxyContin | Oxycodone hydrochloride extended release | Schedule II |
| MS Contin | Morphine sulfate extended release | Schedule II |
| Dilaudid | Hydromorphone hydrochloride | Schedule II |
| Dilaudid-HP | Hydromorphone hydrochloride | Schedule II |
| Butrans | Byprenorpine | Schedule III |
| Hysingla ER | Hydrocodone bitrate | Schedule II |
| Targiniq ER | Oxycodone hydrochloride and naloxone hydrochloride | Schedule II |

Case ID: 180201036

31.     Defendant, Teva Pharmaceuticals USA, Inc. ("Teva USA") is a Delaware corporation with its principal place of business in North Whales, Pennsylvania.  Teva USA is a wholly owned subsidiary of Teva Pharmaceutical Industries, Ltd. ("Teva Ltd."), an Israeli corporation.

32.     Defendant, Cephalon, Inc. is a Delaware corporation with its former place of business in Frazer, Pennsylvania.  In 2011, Teva Ltd. acquired Cephalon, Inc.

33.     Teva USA and Cephalon, Inc. (collectively, "Cephalon") work together to manufacture, promote, distribute and sell both brand name and generic versions of the opiods nationally and in Lawrence County, including the following:

*Table 2. Cephalon Opioids*

| Drug Name | Chemical Name | Schedule |
|-----------|---------------|----------|
| Actiq | Fentanyl citrate | Schedule II |
| Fentora | Fentanyl citrate | Schedule II |

34.     Teva USA was in the business of selling generic opioids, including a generic form of OxyContin from 2005 to 2009 nationally and in Lawrence County.

35.     Defendant, Johnson & Johnson ("J&J") is a New Jersey corporation with its principal place of business in New Brunswick, New Jersey.

36.     Defendant, Janssen Pharmaceutical, Inc. ("Janssen Pharmaceuticals") is a Pennsylvania corporation with its principal place of business in Titusville, New Jersey, and is a wholly owned subsidiary of J&J.

37.     Janssen Pharmaceuticals, Inc. was formerly known as Ortho-McNeil-Janssen Pharmaceuticals, Inc., which in turn was formerly known as Janssen Pharmaceutica, Inc.

38.    Defendant, Ortho-McNeil-Janssen Pharmaceuticals, Inc. ("OMP"), now known as Janssen Pharmaceuticals, Inc. is a Pennsylvania corporation with its principal place of business in Titusville, New Jersey.

39.    J&J is the only company that owns more than 10% of Janssen Pharmaceuticals stock.  Upon information and belief, J&J controls the sale and development of Janssen Pharmaceuticals drugs and Janssen Pharmaceuticals profits inure to J&J's benefit.

40.    J&J, Janssen Pharmaceutical, OMP and Janssen Pharmaceutica (collectively, "Janssen") are or have been engaged in the manufacture, promotion, distribution and sale of opioids nationally and in Lawrence County, including the following:

*Table 3. Janssen Opioids*

| Drug Name | Chemical Name | Schedule |
|-----------|---------------|----------|
| Duragesic | Fentanyl | Schedule II |
| Nucynta | Tapentadol extended release | Schedule II |
| Nucynta Er | Tapentadol | Schedule II |

41.    Together, Nucynta and Nucynta ER accounted for $172 million in sales in 2014. Prior to 2009, Duragesic accounted for at least $1 billion in annual sales.

42.    Defendant, Endo Health Solutions, ("EHS") is a Delaware corporation with its principal place of business in Malvern, Pennsylvania.

43.    Defendant, Endo Pharmaceuticals, Inc. ("EPI") is a wholly owned subsidiary of EHS and is a Delaware corporation with its principal place of business in Malvern, Pennsylvania.

44.    EHS and EPI (collectively, "Endo") manufacture, promote, distribute and sell opioids nationally and in Lawrence County, including the following:

*Table 4. Endo Opioids*

| Drug Name | Chemical Name | Schedule |
|---|---|---|
| Opana ER | Oxymorphone hydrochloride extended release | Schedule II |
| Opana | Oxymorphone hydrochloride | Schedule II |
| Percodan | Oxymorphone hydrochloride and aspirin | Schedule II |
| Percocet | Oxymorphone hydrochloride and acetaminophen | Schedule II |

45.    Defendant, Allergan PLC is a publicly traded company, traded on the New York Stock Exchange.  It is incorporated in Ireland with its principal place of business in Dublin, Ireland.  Its U.S. headquarters are located in Parsippany, New Jersey.  Actavis PLC acquired Allergan PLC in March, 2015 and the combined company changed its name to Allergan PLC in March, 2015.

46.    Defendant, Allergan PLC acquired, merged with, or otherwise combined with several Actavis entities (including Actavis PLC and Actavis, Inc.), Watson entities (including Watson Pharmaceuticals, Inc. and Watson Laboratories, Inc.) and Warner Chilcott entities (including Warner Chilcott Company, LLC and Warner Chilcott PLC) that manufactured, marketed and sold opioids.  Upon information and belief, profits from the sale of opioid products by Activis, Watson and Warner Chilcott ultimately inured or inure to the benfit of Defendant Allergan PLC.

47.    At all times material hereto, Defendant Allergan PLC and the Actavis, Watson and Warner Chilcott entities (collectively referred to herein as "Allergan/Activis") promoted, marketed and sold both brand name and generic versions of opioids nationally and in Lawrence and Philadelphia Counties.

Case ID: 180201036

*Table 5. Allergan/Actavis Opioids*

| Drug Name | Chemical Name | Schedule |
|-----------|---------------|----------|
| Kadian | Morphine sulfate extended release | Schedule II |
| Norco | Hydrocodone bitartrate and acetaminophen | Schedule II |
| Generic Duragesic | Fentanyl | Schedule II |
| Generic Kadian | Morphine sulfate extended release | Schedule II |
| Generic Opana | Oxymorphone hydrochloride | Schedule II |

## IV.   FACTS

48.    The pain relieving properties of opioids are well recognized by the medical community.  Prescription opioids are related to illegal drugs including heroin.  Prescription opioids are controlled substances by the US Drug Enforcement Administration since 1970.

49.    Studies and articles from the 70's and 80's also made clear the reasons to avoid opioids.

50.    In fact, leading journals prohibited the use of opioid therapy for chronic pain.

51.    Medical research shows that discontinuing opioids that have been prescribed for just a few weeks causes withdrawal symptoms which include severe anxiety, nausea, vomiting, headaches, agitation, insomnia, tremors, hallucinations, delirium, pain and other serious symptoms which will persist depending on how long the prescription opioids were used.

52.    Further, the longer that you are on opioids and as your tolerance is increased, the dosage that is needed to achieve the required result becomes greater.  Thus, patients who are on opioids for long use, their dosages escalate because of their tolerance to the drug causing increased risk of overdosing.

53.    However, despite this above information, Defendants promoted opioids for long-term use.  In fact, in 2013 the FDA warned of grave risks of opioids.  The FDA further warned

that the use of prescription drugs, even under medical supervision, can cause life threatening harm. The FDA warned that long-term use of opioids should be used as a last resort when other treatments are inadequate.

54.    The FDA expanded its warnings for immediate release to apply to opioid pain medications. Defendants were well aware of the harms opined by the FDA.

55.    Despite the underlying knowledge of prescription opioids and its risk to users, Defendants successfully marketed and achieved the dramatic expansion of prescription opioids for use for medical purposes in the last 20 years. From 1999 - 2010 the sale of prescription opioids in the US nearly quadrupled.

56.    In 2010, nearly 20% of all doctor visits resulted in prescription of an opioid.

57.    Nearly 70% of adults nationwide have used opioid pain medication in their lifetime and approximately 30% have used opioids in the previous year.

58.    In 2012 7% of adults age 20 and over reported using a prescription opioid in the past 30 days.

59.    In 2017, the CDC noted, prescription opioid related deaths and admissions for treatment of opioid use disorder, have increased in parallel with increased opioids prescribed in the United States which quadrupled from 1999 – 2010. The sales of opioid pain medication have increased in parallel with opioid related deaths.

60.    The principal cause of the opioid epidemic in 1999 – 2014 was the unprecedented increase in use of prescription opioids.

61.    The CDC and other researchers have concluded that prescription opioid is the principal causative factor driving both epidemics and opioid addiction and overdoses.

62.     Defendants' marketing campaign of prescription opioids to physicians, pharmacist and patients has proximately caused damage to Plaintiff and members of the class. Defendants created a false perception it was safe to use prescription opioids for an extended period of time or long term use.

63.     The unbranded marketing materials that Defendants provided did not disclose the risks of addiction, abuse, misuse and overdose.

## V.     CLASS ALLEGATIONS

64.     Plaintiff brings this action against Defendants on behalf of itself and as a class action, pursuant to Pennsylvania Rules of Civil Procedure 1701 *et seq.* on behalf of the following class:

> All political subdivisions, municipalities, cities, townships and counties who incurred damages as a result Defendants' marketing of prescription opioids.

65.     Plaintiff reserves the right to modify or amend the definition of the proposed class before the Court determines whether certification is appropriate.

66.     The proposed class is so numerous that the case would be impracticable under the circumstances. While the exact number of members of the class is unknown to Plaintiff, it is upon information and belief that the class consists of hundreds of entities.

67.     The individual class members are ascertainable, as the names and addresses of all class members can be identified through public records.

68.     Numerous questions of law or fact arise from Defendant's conduct that are common to the Class, including but not limited to:

> a.   Whether Defendants unlawfully marketed prescription opioids in a manner that was unsafe to citizens;
> b.   Whether prescription opioids are intended for long term use;

     c.   Whether prescription opioids should have been marketed for long term use;

     d.   Whether municipalities, cities, counties, townships and other political subdivisions have been harmed as a result of Defendants marketing prescription opioids for long term use;

     e.   Whether class members are entitled to damages

     f.   Whether Plaintiff and class members are entitled to injunctive relief; and

     g.   Whether Defendants are liable.

69.     These and other questions are common to the Class and predominate over any questions affecting only individual class members.

70.     Plaintiff's claims are typical of the Class in that Plaintiff suffered damages as a result of Defendants' marketing of prescription opioids for long term use when they are unsafe for long term use.

71.     Plaintiff will fairly and adequately represent the interests of the Class in that it has no conflict with any other members of the Class.  Furthermore, Plaintiff has retained competent counsel experienced in class action and other complex commercial litigation.

72.     Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief appropriate with respect to the Class as a whole.

73.     This class action is superior to the alternatives, if any, for the fair and efficient adjudication of this controversy.  Prosecution as a class action will eliminate the possibility of repetitive litigation.  There will be no material difficulty in the management of this action as a class action.

74.     The prosecution of separate actions by individual class members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

75.     Class members who have already retained counsel will have the financial ability to opt-out and prosecute their actions individually without the use of a class action. However, numerous counties, municipalities, townships and cities will not have the financial resources to retain a lawyer to prosecute this action. A class action will be an effective procedural mechanism to allow smaller cities, counties and townships to be reimbursed for harm done by Defendants.

### FIRST CAUSE OF ACTION
### CONSUMER FRAUD-DECEPTIVE PRACTICES 73 P.S. § 201-1 – 201-9.3 *et seq.*
### (AGAINST ALL DEFENDANTS)

76.     Plaintiff incorporates the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

77.     73 P.S. § 201-1 – 201-9.3 *et seq.*, ("Pennsylvania Unfair Trade Practices and Consumer Protection Law" or "UTPCPL") makes it unlawful for a person or business to employ "unfair methods of competition" and "unfair or deceptive acts or practices" by representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have.  73 P.S. § 201.2(4)(v).

78.     Defendants have engaged in unfair or deceptive acts or practices in violation of UTPCPL as set forth above.

79.     Defendants' practices as described herein are unfair or deceptive acts or practices that violate UTPCPL because the practices were and are intended to deceive consumers and occurred and continue to occur in the course of conduct involving trade and commerce in the City of New Castle and throughout the Commonwealth of Pennsylvania.

80.     At all times relevant to this Complaint, Defendants, directly, through their control of third parties, and/or by aiding and abetting third parties, violated the UTPCPL by making an disseminating untrue, false and misleading statements to Pennsylvania prescribers and consumers to promote the sale and use of opioids to treat chronic pain, or by causing untrue, false and misleading statements about opioids to be made or disseminated to Pennsylvania and County prescribers and consumers in order to promote the sale and use of opioids to treat chronic pain.  These untrue, false and misleading statements included, but were not limited to:

    a.  Misrepresenting the truth about how opioids lead to addiction;

    b.  Misrepresenting that opioids improve function;

    c.  Misrepresenting that addiction risk can be managed;

    d.  Misleading doctors, patients and payors through the use of misleading terms like "pseudoaddiction";

    e.  Falsely claiming that withdrawal is simply managed;

    f.  Misrepresenting that increased doses pose no significant additional risks;

    g.  Falsely omitting or minimizing the adverse effects of opioids and overstating the risks of alternative forms of pain treatment.

81.     At all times relevant to this Complaint, Defendants, directly, through their control of third parties, and by aiding and abetting third parties, also violated the UTPCPL by making statements that omitted or concealed material facts to promote the sale and use of opioids to treat chronic pain.  Defendants and their third-party allies repeatedly failed to disclose or minimized material facts about the risks of opioids, including the risk of addiction and their risks compared to alternative treatments.  Such material omissions were deceptive and misleading in their own right, and further rendered even otherwise truthful statements about opioids untrue, false and

misleading, creating a misleading impression of the risks, benefits and superiority of opioids for treatment of chronic pain.

82.     At all times relevant to this Complaint, Defendants, directly, through their control of third parties and by aiding and abetting third parties, made and disseminated the foregoing untrue, false and misleading statements and material omissions, through an array of marketing channels, including but not limited to: in-person and other forms of detailing; speaker events, including meals, conferences and teleconferences; CMEs; studies and journal articles and supplements; advertisements; and brochures and other patient education materials.

83.     Defendants knew at the time of making or disseminating these misstatements and material omissions, or causing these misstatements and material omissions statements to be made or disseminated, that they were untrue, false or misleading and therefore likely to deceive the public.  In addition, Defendants knew or should have known that their marketing and promotional efforts created an untrue, false and misleading impression of the risks, benefits and superiority of opioids.

84.     In sum, Defendants: (a) directly engaged in untrue, false and misleading marketing; (b) disseminated the untrue, false and misleading marketing through third parties; and (c) aided and abetted the untrue, false and misleading marketing third parties.

85.     All of this conduct, separately and collectively, was intended to deceive Pennsylvania consumers who used or paid for opioids for chronic pain; Pennsylvania physicians who prescribed opioids to consumers to treat chronic pain; and Pennsylvania payors, including the County, who purchased or covered the purchase of opioids for chronic pain.  As a direct result of the foregoing acts and practices, the Defendants have received, or will receive, income,

profits and other benefits, which they would not have received if they had not engaged in the violations of the UTPCPL as described in this Complaint.

86.     In addition, 73 P.S. § 201-8(b) specifically allows the City of New Castle to bring this claim for a penalty for each violation by the Defendants.

## SECOND CAUSE OF ACTION
## PUBLIC NUISANCE
## (AGAINST ALL DEFENDANTS)

87.     Plaintiff incorporates the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

88.      Defendants' conduct constitutes a public nuisance.

89.     Defendants, individually and acting through their employees and agents and in concert with each other, have intentionally, recklessly or negligently engaged in conduct or omissions which endanger or injure other property, health, safety or comfort of a considerable number of persons in the City of New Castle by their untrue, false and misleading promotion and marketing of opioids for use by residents of the City of New Castle.

90.     Defendants' marketing conduct and subsequent sale of its opioid products is not only unlawful, but has also resulted in substantial and unreasonable interference with the public health, and the public's enjoyment of its right that not to be defrauded or negligently injured.

91.     Defendants' conduct is not insubstantial or fleeting. Indeed, Defendants' unlawful conduct has so severely impacted public health on every geographic and demographic level that the public nuisance perpetrated by Defendants' conduct is commonly referred to as "crisis" or an "epidemic". It has caused deaths, serious injuries and a severe disruption of public peace, order and safety; it is ongoing and it is producing permanent and long-lasting damage.

92.     By reason of the foregoing, the City of New Castle has been injured and continues to be injured in that it has paid and continues to pay for long-term opioid treatment using opioids manufactured or distributed by Defendants or by other drug makers.  The City of New Castle has suffered additional damages and continues to suffer damage for the additional costs of providing and using opioids long-term to treat chronic pain.

### THIRD CAUSE OF ACTION
### UNJUST ENRICHMENT
### VIOLATIONS OF THE COMMON LAW PROHIBITION ON UNJUST ENRICHMENT
### (AGAINST ALL DEFENDANTS)

93.     Plaintiff incorporates the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

94.      Defendants have unjustly retained a benefit to the City of New Castle's detriment, and the Defendants' retention of the benefit violates the fundamental principles of justice, equity and good conscience.

95.     By illegally and deceptively promoting opioids to treat chronic pain, directly, through their control of third parties, and by acting in concert with third parties, Defendants have unjustly enriched themselves at the City of New Castle's expense.  The City of New Castle has made payments for opioid prescriptions and Defendants benefited from those payments. Because of their deceptive promotion of opioids, Defendants obtained enrichment they would not otherwise have obtained.  The enrichment was without justification and Plaintiff claims a remedy provided by law.

96.     In addition, and by reason of the foregoing, Plaintiff was injured and continues to be injured in that Defendants' ongoing concerted actions in illegally and deceptively marketing opioids caused doctors and other health care providers to prescribe and Plaintiff to pay for long-term opioid treatment using opioids manufactured by Defendants or by other drug makers,

Defendants caused and are responsible for those costs and claims. Plaintiff has suffered additional damages for the costs of providing and using opioids long-term to treat chronic pain.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment on each Cause of Action against Defendants in excess of Fifty Thousand Dollars ($50,000), jointly and severally awarding Plaintiff:

1. Compensatory damages in an amount sufficient to fairly and completely compensate Plaintiff for all damages;

2. Treble damages, penalties and costs pursuant to Consumer Fraud – Deceptive Practices, violations of 73 P.S. § 201-1 – 201-9.3 *et seq*.;

3. Certifying the class;

4. A declaratory judgment requiring Defendants to abate the public health nuisance;

5. Punitive damages;

6. Interest, costs and attorney fees; and

7. Such other and further relief as this Court deems just and proper.

LEVIN SEDRAN & BERMAN LLP

Date:   February 13, 2018

/s/ Daniel C. Levin
Arnold Levin, Esquire
Daniel C. Levin, Esquire
Charles E. Schaffer, Esquire
510 Walnut Street, Ste. 500
Philadelphia, Pa 19106
215-592-1500

*Attorneys for Plaintiff*

## **VERIFICATION**

I, _Stephanie Dean_ , hereby state that I am the plaintiff in this action, and that the facts

set forth in the foregoing Class Action Complaint are true and correct to the best of my knowledge.

I understand that this Verification is being made subject to 18 Pa. C.S.A. § 4904, relating to unsworn

falsification to authorizations.

_2/12/18_
Date

_Stephanie A. De___

Case ID: 180201036



## Court of Common Pleas of Philadelphia County
### Trial Division
# Civil Cover Sheet

For Prothonotary Use Only (Docket Number)

**FEBRUARY 2018**

**001036**

E-Filing Number 1802027861

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| THE CITY OF NEW CASTLE | PURDUE PHARMA L.P. |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 230 N. JEFFERSON STREET MUNICIPAL BUILDING NEW CASTLE PA 16101 | ONE STAMFORD FORUM 201 TRESSER BLVD STAMFORD CT 06901 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| RECEIVED | PURDUE PHARMA INC. |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| FEB 2 8 2018 | ONE STAMFORD FORUM 201 TRESSER BLVD STAMFORD CT 06901 |

*Legal Affairs*

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | THE PURDUE FREDERICK COMPANY INC. |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | ONE STAMFORD FORUM 201 TRESSER BLVD STAMFORD CT 06901 |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 1 | 11 | [X] Complaint  [ ] Petition Action  [ ] Notice of Appeal
[ ] Writ of Summons  [ ] Transfer From Other Jurisdictions |

**AMOUNT IN CONTROVERSY**

[ ] $50,000.00 or less
[X] More than $50,000.00

**COURT PROGRAMS**

| | |
|---|---|
| [ ] Arbitration | [ ] Mass Tort |
| [ ] Jury | [ ] Savings Action |
| [ ] Non-Jury | [ ] Petition |
| [X] Other  CLASS ACTION | |

| | |
|---|---|
| [ ] Commerce | [ ] Settlement |
| [ ] Minor Court Appeal | [ ] Minors |
| [ ] Statutory Appeals | [ ] W/D/Survival |

**CASE TYPE AND CODE**

C1 - CLASS ACTION

**STATUTORY BASIS FOR CAUSE OF ACTION**

**RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER)**

**FILED PRO PROTHY**

**FEB 13 2018**

**M. BRYANT**

**IS CASE SUBJECT TO COORDINATION ORDER?**

YES        NO

2018 FEB 16 A 10: 51

**TO THE PROTHONOTARY:**

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: THE CITY OF NEW CASTLE

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| DANIEL C. LEVIN | 510 WALNUT STREET, STE. 500 |
| **PHONE NUMBER**   **FAX NUMBER** | LEVIN SEDRAN & BERMAN |
| (215)592-1500   none entered | PHILADELPHIA PA 19106 |

| SUPREME COURT IDENTIFICATION NO | E-MAIL ADDRESS |
|---|---|
| 80013 | dlevin@lfsblaw.com |

| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
|---|---|
| DANIEL LEVIN | Tuesday, February 13, 2018, 02:18 pm |

FINAL COPY (Approved by the Prothonotary Clerk)

## COMPLETE LIST OF DEFENDANTS:

1. PURDUE PHARMA L.P.
      ONE STAMFORD FORUM 201 TRESSER BLVD
      STAMFORD CT 06901
2. PURDUE PHARMA INC.
      ONE STAMFORD FORUM 201 TRESSER BLVD
      STAMFORD CT 06901
3. THE PURDUE FREDERICK COMPANY INC.
      ONE STAMFORD FORUM 201 TRESSER BLVD
      STAMFORD CT 06901
4. TEVA PHARMACEUTICALS USA, INC.
      1090 HORSHAM ROAD
      NORTH WHALES PA 19454
5. CEPHALON, INC.
      1090 HORSHAM ROAD
      NORTH WHALES PA 19454
6. JOHNSON & JOHNSON
      1 JOHNSON & JOHNSON PLAZA
      NEW BRUNSWICK NJ 08933
7. JANSSEN PHARMACEUTICALS, INC.
      1125 TRENTON HARBOUTON ROAD
      TITUSVILLE NJ 08560
8. ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC.
      ALIAS: N/K/A JANSSEN PHARMACEUTICALS, INC.
      1125 TRENTON HARBOUTON ROAD
      TITUSVILLE NJ 08660
9. JANSSEN PHARMACEUTICA, INC.
      ALIAS: N/K/A JANSSEN PHARMACEUTICALS, INC.
      1125 TRENTON HARBOUTON ROAD
      TITUSVILLE NJ 08560
10. ENDO HEALTH SOLUTIONS, INC.
      1400 ATWATER DRIVE
      MALVERN PA 19355
11. ALLERGAN PLC
      MORRIS CORPORATE CENTER III 400 INTERPACE PARKWAY
      PARSIPPANY NJ 07054

LEVIN SEDRAN & BERMAN LLP
ARNOLD LEVIN, ESQUIRE
DANIEL C. LEVIN, ESQUIRE
CHARLES E. SCHAFFER, ESQUIRE
Identification No. 02280, 80013 & 76259
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500


Filed and Attested by the
Office of Judicial Records
13 FEB 2018 02:18 pm
M. BRYANT

Attorneys for Plaintiff

JURY TRIAL DEMANDED
TWELVE JURORS REQUESTED

COURT OF COMMON PLEAS OF

PHILADELPHIA COUNTY

THE CITY OF NEW CASTLE, on behalf of: itself and other similarly situated,

                Plaintiff,

    v.

PURDUE PHARMA L.P.
One Stamford Forum
201 Tresser Boulevard
Stamford, Connecticut 06901
      And
PURDUE PHARMA INC.
One Stamford Forum
201 Tresser Boulevard
Stamford, Connecticut 06901
      And
THE PURDUE FREDERICK COMPANY, INC.
One Stamford Forum
201 Tresser Boulevard
Stamford, Connecticut 06901
      And
TEVA PHARMACEUTICALS USA, INC.
1090 Horsham Road
North Whales, Pennsylvania 19454
      And
CEPHALON, INC.
1090 Horsham Road
North Whales, Pennsylvania 19454
      And
JOHNSON & JOHNSON
1 Johnson & Johnson Plaza
New Brunswick, New Jersey 08933
      And

NO.

**CLASS ACTION COMPLAINT**

2018 FEB 16 A 10: 51

Case ID: 180201036

JANSSEN PHARMACEUTICALS, INC.  :
1125 Trenton Harbouton Road          :
Titusville, New Jersey 08560-0200    :
     And                                          :
ORTHO-McNEIL-JANSSEN               :
PHARMACEUTICALS, INC. N/K/A        :
JANSSEN PHARMACEUTICALS, INC.  :
1125 Trenton Harbouton Road          :
Titusville, New Jersey 08560-0200    :
     And                                          :
JANSSEN PHARMACEUTICA, INC.     :
N/K/A JANSSEN PHARMACEUTICALS,  :
INC.                                            :
1125 Trenton Harbouton Road          :
Titusville, New Jersey 08560-0200    :
     And                                          :
ENDO HEALTH SOLUTIONS INC.      :
1400 Atwater Drive                       :
Malvern, Pennsylvania 19355          :
     And                                          :
ALLERGAN PLC                            :
Morris Corporate Center III            :
400 Interpace Parkway                   :
Parsippany, NJ 07054                     :
                           :
     Defendants.                               :

## NOTICE

   You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.**

## AVISO

   Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siquientes, usted tiene viente (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

**LLEVE ESTA DEMANDA A UN ABOGADO IMMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICO.**

Case ID: 180201036

**VAYA EN PERSONA O LLAME PONDIMIN OR REDUX TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.**

PHILADELPHIA BAR ASSOCIATION
Lawyer Referral and Information Service
1101 Market Street, 11th Floor
Philadelphia, Pennsylvania 19107
215·238·6300

ASOCIACIÓN DE LICENCIADOS DE FILADELFIA
Servicio De Referencia E Información Legal
1101 Market Street, 11th Floor
Filadelfia, Pennsylvania 19107
215·238·6300

## CLASS ACTION COMPLAINT

Plaintiff, The City of New Castle ("Plaintiff" or "New Castle") brings this action on

behalf of itself and other similarly situated townships, cities, municipalities and other counties

against Defendants, Purdue Pharma L.P., Purdue Pharma Inc., The Purdue Frederick Company,

Inc., Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Johnson & Johnson, Janssen

Pharmaceuticals, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., n/k/a Janssen

Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Endo Health

Solutions, Inc., Endo Pharmaceuticals, Inc., Perry Fine, Scott Fishman and Lynn Webster

(collectively, "Defendants") and alleges as follows:

**I.      INTRODUCTION**

1.      Plaintiff, like many other cities, municipalities, counties and townships across this

country are suffering from severe public health and safety crisis arising out of the unlawful and

deceptive marketing and sale of prescription opioids by Defendants.

2.      The deceptive marketing and sale of prescription opioids for medical use in New

Castle are responsible for an opioid epidemic addiction.

3.      As a result of the opioid epidemic, Plaintiff has suffered a public health and safety

crisis.  As a result of the opioid epidemic, Plaintiff has suffered public safety, lack of economic

productivity and quality of life in its city.  Further, Plaintiff has expended money to contain the

epidemic and adverse impacts on public health and safety which has caused it to suffer damages.

Further, the opioid crisis has affected the citizens of New Castle resulting in crime, family and

social disfunction.  The opioid epidemic has caused health consequences to the citizens of New

Castle.  Finally, the city agencies have been responsible for coping and containing the epidemic

crisis by expending unnecessary money to discharge their duties.

Case ID: 180201036

4.      The opioid epidemic has affected New Castle's agencies including police, fire and hospitals which has greatly increased costs to Plaintiff.

5.      The opioid epidemic has also affected the law enforcement authorities which include the criminal justice system, social services, health and municipal agencies. Plaintiff has been forced to incur substantial costs as a provider of health coverage to its employees, their families and emergency health services as a result of the opioid epidemic.

6.      The costs incurred by Plaintiff are similar to costs that are incurred by cities and municipalities across the country. The epidemic is directly a result of the commercial activities of Defendants.

7.      The opioid drugs that are prescribed by the Defendants are dangerous and have severe adverse side effects to its users. The Defendants marketed and promoted the prescription drugs for long-term use to treat chronic pain. However, the overwhelming weight of medical and scientific authority is that the prescription opioids should not be used for long term treatment or chronic pain.

8.      The opioids include brand name drugs like OxyContin and Percocet and generics like oxycodone and hydrocodone. The oxycodone is derived from properties similar to opium and heroin, and, as such are highly addictive and dangerous and are regulated by the United States Food and Drug Administration ("FDA") as controlled substances.

9.      While opioids provide effective treatment for short-term, post-surgical and trauma-related pain, the Defendants have manufactured, promoted and marketed the opioids for management of pain by misleading consumers and providers regarding their appropriate use. Opioids should not be prescribed for long-term treatment.

Case ID: 180201036

10.     Opioids are addictive drugs.  Defendants knew that barring exceptional circumstances, opioids are too addictive and too debilitating for long-term use.

11.     The Defendants knew with prolonged use, the effectiveness of opioids will be outweighed by the risks of side effects and addiction.

12.     Defendants knew of controlled studies where the risks of addiction and adverse outcomes were significantly minimized by prescribing opioids for limited short-term use. Despite this information, Defendants marketed opioids for long-term use creating a false perception of the safety and efficacy of opioids.  Defendants had a highly deceptive marketing campaign that begin in the late 1990's up until 2006.

13.     Defendants were able to convince doctors to prescribe opioids for long-term use even though Defendants were aware of the negative consequences of using opioids for long-term use.

14.     Defendants were aware that opioid use should be short-term because opioids are addictive and debilitating under long-term use.

15.     Plaintiff brings this class action on behalf of Pennsylvania government entities to obtain mandatory injunctive relief, compensatory and punitive damages.  Plaintiff seeks that Defendants cease all promotional activities of prescribing opioids as safe and effective treatment for chronic pain and long term use.

16.     Plaintiff and members of the class also seek actual damages to recover costs of reimbursement of prescription opioids for long-term daily use and the cost of treatment of opioid addiction and other adverse medical conditions associated with long-term use incurred by the class members' health plans and paid directly by it.

17.     Plaintiff and members of the class also seek recovery of its costs of increased medical services directly associated with opioids including increased emergency response costs, increased costs of New Castle law enforcement authorities, its criminal justice system and social and health agencies which are attributable to the long-term use of prescription opioids to treat chronic pain.

18.     Plaintiff brings this action against Defendants for public nuisance, violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law and unjust enrichment.

## II.     JURISDICTION AND VENUE

19.     This Court has jurisdiction over this action pursuant to 42 Pa.C.S. § 931(a).  The amount in controversy exceeds $50,000 exclusive of interest and costs.

20.     Venue is proper in Philadelphia County because Defendants conduct substantial amounts of business in Philadelphia County.

21.     This action is not removable to federal court.  Among other things, there is insufficient diversity for removal.  Plaintiff is not considered a party for purposes of diversity of citizenship, jurisdiction in any event.

## III.     PARTIES

22.     Plaintiff, The City of New Castle is the County Seat in Lawrence County, Pennsylvania.  It is home to approximately 20,000 residents.

23.     The City of New Castle provides a wide range of social services on behalf of the New Castle residents including health related services.  In addition, New Castle provides funding for, including but not limited to, the New Castle Police Department, New Castle Fire Department, New Castle District Attorney's Office, New Castle Defenders Association and Social Services.

24.     Plaintiff still funds its own benefits plan on behalf of its full time employees through which it pays medical costs including cost of treatment, opioid addiction, related disease, etc.

25.     Plaintiff self funds its own worker's compensation and disability plan through which it pays disability costs and related benefits for covered employees.

26.     Plaintiff's health, prescription, workers' compensation and disability plans are administered by third party service providers that are in the business of administrating employee health plan accounts and worker's compensation and disability benefits.

27.     Defendant, Purdue Pharma L.P. ("PPL") is a limited partnership organized under the laws of Delaware with its principal place of business in Stamford, Connecticut.

28.     Defendant Purdue Pharma Inc. ("PPI") is a New York corporation with its principal place of business in Stamford, Connecticut.

29.     Defendant, The Purdue Frederick Company, Inc. ("PFC") is a New York corporation with its principal place of business in Stamford, Connecticut.

30.     PPL, PPI and PFC (collectively, "Purdue") are engaged in the manufacture, promotion, distribution and sale of opioids nationally, in the Commonwealth of Pennsylvania and in Lawrence County, including the following:

*Table 1. Purdue Opioids*

| Drug Name | Chemical Name | Schedule |
|---|---|---|
| OxyContin | Oxycodone hydrochloride extended release | Schedule II |
| MS Contin | Morphine sulfate extended release | Schedule II |
| Dilaudid | Hydromorphone hydrochloride | Schedule II |
| Dilaudid-HP | Hydromorphone hydrochloride | Schedule II |
| Butrans | Byprenorpine | Schedule III |
| Hysingla ER | Hydrocodone bitrate | Schedule II |
| Targiniq ER | Oxycodone hydrochloride and naloxone hydrochloride | Schedule II |

31.     Defendant, Teva Pharmaceuticals USA, Inc. ("Teva USA") is a Delaware corporation with its principal place of business in North Whales, Pennsylvania.  Teva USA is a wholly owned subsidiary of Teva Pharmaceutical Industries, Ltd. ("Teva Ltd."), an Israeli corporation.

32.     Defendant, Cephalon, Inc. is a Delaware corporation with its former place of business in Frazer, Pennsylvania.  In 2011, Teva Ltd. acquired Cephalon, Inc.

33.     Teva USA and Cephalon, Inc. (collectively, "Cephalon") work together to manufacture, promote, distribute and sell both brand name and generic versions of the opiods nationally and in Lawrence County, including the following:

*Table 2. Cephalon Opioids*

| Drug Name | Chemical Name | Schedule |
|-----------|---------------|----------|
| Actiq | Fentanyl citrate | Schedule II |
| Fentora | Fentanyl citrate | Schedule II |

34.     Teva USA was in the business of selling generic opioids, including a generic form of OxyContin from 2005 to 2009 nationally and in Lawrence County.

35.     Defendant, Johnson & Johnson ("J&J") is a New Jersey corporation with its principal place of business in New Brunswick, New Jersey.

36.     Defendant, Janssen Pharmaceutical, Inc. ("Janssen Pharmaceuticals") is a Pennsylvania corporation with its principal place of business in Titusville, New Jersey, and is a wholly owned subsidiary of J&J.

37.     Janssen Pharmaceuticals, Inc. was formerly known as Ortho-McNeil-Janssen Pharmaceuticals, Inc., which in turn was formerly known as Janssen Pharmaceutica, Inc.

38.    Defendant, Ortho-McNeil-Janssen Pharmaceuticals, Inc. ("OMP"), now known as Janssen Pharmaceuticals, Inc. is a Pennsylvania corporation with its principal place of business in Titusville, New Jersey.

39.    J&J is the only company that owns more than 10% of Janssen Pharmaceuticals stock.  Upon information and belief, J&J controls the sale and development of Janssen Pharmaceuticals drugs and Janssen Pharmaceuticals profits inure to J&J's benefit.

40.    J&J, Janssen Pharmaceuticals, OMP and Janssen Pharmaceutica (collectively, "Janssen") are or have been engaged in the manufacture, promotion, distribution and sale of opioids nationally and in Lawrence County, including the following:

*Table 3. Janssen Opioids*

| Drug Name | Chemical Name | Schedule |
|---|---|---|
| Duragesic | Fentanyl | Schedule II |
| Nucynta | Tapentadol extended release | Schedule II |
| Nucynta Er | Tapentadol | Schedule II |

41.    Together, Nucynta and Nucynta ER accounted for $172 million in sales in 2014. Prior to 2009, Duragesic accounted for at least $1 billion in annual sales.

42.    Defendant, Endo Health Solutions, ("EHS") is a Delaware corporation with its principal place of business in Malvern, Pennsylvania.

43.    Defendant, Endo Pharmaceuticals, Inc. ("EPI") is a wholly owned subsidiary of EHS and is a Delaware corporation with its principal place of business in Malvern, Pennsylvania.

44.    EHS and EPI (collectively, "Endo") manufacture, promote, distribute and sell opioids nationally and in Lawrence County, including the following:

*Table 4. Endo Opioids*

| Drug Name | Chemical Name | Schedule |
|-----------|---------------|----------|
| Opana ER | Oxymorphone hydrochloride extended release | Schedule II |
| Opana | Oxymorphone hydrochloride | Schedule II |
| Percodan | Oxymorphone hydrochloride and aspirin | Schedule II |
| Percocet | Oxymorphone hydrochloride and acetaminophen | Schedule II |

45.     Defendant, Allergan PLC is a publicly traded company, traded on the New York Stock Exchange. It is incorporated in Ireland with its principal place of business in Dublin, Ireland. Its U.S. headquarters are located in Parsippany, New Jersey. Actavis PLC acquired Allergan PLC in March, 2015 and the combined company changed its name to Allergan PLC in March, 2015.

46.     Defendant, Allergan PLC acquired, merged with, or otherwise combined with several Actavis entities (including Actavis PLC and Actavis, Inc.), Watson entities (including Watson Pharmaceuticals, Inc. and Watson Laboratories, Inc.) and Warner Chilcott entities (including Warner Chilcott Company, LLC and Warner Chilcott PLC) that manufactured, marketed and sold opioids. Upon information and belief, profits from the sale of opioid products by Activis, Watson and Warner Chilcott ultimately inured or inure to the benfit of Defendant Allergan PLC.

47.     At all times material hereto, Defendant Allergan PLC and the Actavis, Watson and Warner Chilcott entities (collectively referred to herein as "Allergan/Activis") promoted, marketed and sold both brand name and generic versions of opioids nationally and in Lawrence and Philadelphia Counties.

*Table 5. Allergan/Actavis Opioids*

| Drug Name | Chemical Name | Schedule |
|-----------|---------------|----------|
| Kadian | Morphine sulfate extended release | Schedule II |
| Norco | Hydrocodone bitartrate and acetaminophen | Schedule II |
| Generic Duragesic | Fentanyl | Schedule II |
| Generic Kadian | Morphine sulfate extended release | Schedule II |
| Generic Opana | Oxymorphone hydrochloride | Schedule II |

## IV.    FACTS

48.    The pain relieving properties of opioids are well recognized by the medical community. Prescription opioids are related to illegal drugs including heroin. Prescription opioids are controlled substances by the US Drug Enforcement Administration since 1970.

49.    Studies and articles from the 70's and 80's also made clear the reasons to avoid opioids.

50.    In fact, leading journals prohibited the use of opioid therapy for chronic pain.

51.    Medical research shows that discontinuing opioids that have been prescribed for just a few weeks causes withdrawal symptoms which include severe anxiety, nausea, vomiting, headaches, agitation, insomnia, tremors, hallucinations, delirium, pain and other serious symptoms which will persist depending on how long the prescription opioids were used.

52.    Further, the longer that you are on opioids and as your tolerance is increased, the dosage that is needed to achieve the required result becomes greater. Thus, patients who are on opioids for long use, their dosages escalate because of their tolerance to the drug causing increased risk of overdosing.

53.    However, despite this above information, Defendants promoted opioids for long-term use. In fact, in 2013 the FDA warned of grave risks of opioids. The FDA further warned

Case ID: 180201036

that the use of prescription drugs, even under medical supervision, can cause life threatening harm. The FDA warned that long-term use of opioids should be used as a last resort when other treatments are inadequate.

54.     The FDA expanded its warnings for immediate release to apply to opioid pain medications. Defendants were well aware of the harms opined by the FDA.

55.     Despite the underlying knowledge of prescription opioids and its risk to users, Defendants successfully marketed and achieved the dramatic expansion of prescription opioids for use for medical purposes in the last 20 years. From 1999 - 2010 the sale of prescription opioids in the US nearly quadrupled.

56.     In 2010, nearly 20% of all doctor visits resulted in prescription of an opioid.

57.     Nearly 70% of adults nationwide have used opioid pain medication in their lifetime and approximately 30% have used opioids in the previous year.

58.     In 2012 7% of adults age 20 and over reported using a prescription opioid in the past 30 days.

59.     In 2017, the CDC noted, prescription opioid related deaths and admissions for treatment of opioid use disorder, have increased in parallel with increased opioids prescribed in the United States which quadrupled from 1999 – 2010. The sales of opioid pain medication have increased in parallel with opioid related deaths.

60.     The principal cause of the opioid epidemic in 1999 – 2014 was the unprecedented increase in use of prescription opioids.

61.     The CDC and other researchers have concluded that prescription opioid is the principal causative factor driving both epidemics and opioid addiction and overdoses.

62.     Defendants' marketing campaign of prescription opioids to physicians, pharmacist and patients has proximately caused damage to Plaintiff and members of the class. Defendants created a false perception it was safe to use prescription opioids for an extended period of time or long term use.

63.     The unbranded marketing materials that Defendants provided did not disclose the risks of addiction, abuse, misuse and overdose.

## V.     CLASS ALLEGATIONS

64.     Plaintiff brings this action against Defendants on behalf of itself and as a class action, pursuant to Pennsylvania Rules of Civil Procedure 1701 *et seq.* on behalf of the following class:

> All political subdivisions, municipalities, cities, townships and counties who incurred damages as a result Defendants' marketing of prescription opioids.

65.     Plaintiff reserves the right to modify or amend the definition of the proposed class before the Court determines whether certification is appropriate.

66.     The proposed class is so numerous that the case would be impracticable under the circumstances. While the exact number of members of the class is unknown to Plaintiff, it is upon information and belief that the class consists of hundreds of entities.

67.     The individual class members are ascertainable, as the names and addresses of all class members can be identified through public records.

68.     Numerous questions of law or fact arise from Defendant's conduct that are common to the Class, including but not limited to:

> a.   Whether Defendants unlawfully marketed prescription opioids in a manner that was unsafe to citizens;
> b.   Whether prescription opioids are intended for long term use;

c. Whether prescription opioids should have been marketed for long term use;

d. Whether municipalities, cities, counties, townships and other political subdivisions have been harmed as a result of Defendants marketing prescription opioids for long term use;

e. Whether class members are entitled to damages

f. Whether Plaintiff and class members are entitled to injunctive relief; and

g. Whether Defendants are liable.

69.     These and other questions are common to the Class and predominate over any questions affecting only individual class members.

70.     Plaintiff's claims are typical of the Class in that Plaintiff suffered damages as a result of Defendants' marketing of prescription opioids for long term use when they are unsafe for long term use.

71.     Plaintiff will fairly and adequately represent the interests of the Class in that it has no conflict with any other members of the Class.  Furthermore, Plaintiff has retained competent counsel experienced in class action and other complex commercial litigation.

72.     Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief appropriate with respect to the Class as a whole.

73.     This class action is superior to the alternatives, if any, for the fair and efficient adjudication of this controversy.  Prosecution as a class action will eliminate the possibility of repetitive litigation.  There will be no material difficulty in the management of this action as a class action.

74.     The prosecution of separate actions by individual class members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

75.     Class members who have already retained counsel will have the financial ability

to opt-out and prosecute their actions individually without the use of a class action.  However,

numerous counties, municipalities, townships and cities will not have the financial resources to

retain a lawyer to prosecute this action.  A class action will be an effective procedural

mechanism to allow smaller cities, counties and townships to be reimbursed for harm done by

Defendants.

**FIRST CAUSE OF ACTION**
**CONSUMER FRAUD-DECEPTIVE PRACTICES 73 P.S. § 201-1 – 201-9.3 *et seq.***
**(AGAINST ALL DEFENDANTS)**

76.     Plaintiff incorporates the allegations within all prior paragraphs within this

Complaint as if they were fully set forth herein.

77.     73 P.S. § 201-1 – 201-9.3 *et seq.*, ("Pennsylvania Unfair Trade Practices and

Consumer Protection Law" or "UTPCPL") makes it unlawful for a person or business to employ

"unfair methods of competition" and "unfair or deceptive acts or practices" by representing that

goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or

quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or

connection that he does not have.  73 P.S. § 201.2(4)(v).

78.     Defendants have engaged in unfair or deceptive acts or practices in violation of

UTPCPL as set forth above.

79.     Defendants' practices as described herein are unfair or deceptive acts or practices

that violate UTPCPL because the practices were and are intended to deceive consumers and

occurred and continue to occur in the course of conduct involving trade and commerce in the

City of New Castle and throughout the Commonwealth of Pennsylvania.

80.     At all times relevant to this Complaint, Defendants, directly, through their control of third parties, and/or by aiding and abetting third parties, violated the UTPCPL by making an disseminating untrue, false and misleading statements to Pennsylvania prescribers and consumers to promote the sale and use of opioids to treat chronic pain, or by causing untrue, false and misleading statements about opioids to be made or disseminated to Pennsylvania and County prescribers and consumers in order to promote the sale and use of opioids to treat chronic pain. These untrue, false and misleading statements included, but were not limited to:

    a.   Misrepresenting the truth about how opioids lead to addiction;

    b.   Misrepresenting that opioids improve function;

    c.   Misrepresenting that addiction risk can be managed;

    d.   Misleading doctors, patients and payors through the use of misleading terms like "pseudoaddiction";

    e.   Falsely claiming that withdrawal is simply managed;

    f.   Misrepresenting that increased doses pose no significant additional risks;

    g.   Falsely omitting or minimizing the adverse effects of opioids and overstating the risks of alternative forms of pain treatment.

81.     At all times relevant to this Complaint, Defendants, directly, through their control of third parties, and by aiding and abetting third parties, also violated the UTPCPL by making statements that omitted or concealed material facts to promote the sale and use of opioids to treat chronic pain. Defendants and their third-party allies repeatedly failed to disclose or minimized material facts about the risks of opioids, including the risk of addiction and their risks compared to alternative treatments. Such material omissions were deceptive and misleading in their own right, and further rendered even otherwise truthful statements about opioids untrue, false and

misleading, creating a misleading impression of the risks, benefits and superiority of opioids for treatment of chronic pain.

82.     At all times relevant to this Complaint, Defendants, directly, through their control of third parties and by aiding and abetting third parties, made and disseminated the foregoing untrue, false and misleading statements and material omissions, through an array of marketing channels, including but not limited to: in-person and other forms of detailing; speaker events, including meals, conferences and teleconferences; CMEs; studies and journal articles and supplements; advertisements; and brochures and other patient education materials.

83.     Defendants knew at the time of making or disseminating these misstatements and material omissions, or causing these misstatements and material omissions statements to be made or disseminated, that they were untrue, false or misleading and therefore likely to deceive the public. In addition, Defendants knew or should have known that their marketing and promotional efforts created an untrue, false and misleading impression of the risks, benefits and superiority of opioids.

84.     In sum, Defendants: (a) directly engaged in untrue, false and misleading marketing; (b) disseminated the untrue, false and misleading marketing through third parties; and (c) aided and abetted the untrue, false and misleading marketing third parties.

85.     All of this conduct, separately and collectively, was intended to deceive Pennsylvania consumers who used or paid for opioids for chronic pain; Pennsylvania physicians who prescribed opioids to consumers to treat chronic pain; and Pennsylvania payors, including the County, who purchased or covered the purchase of opioids for chronic pain. As a direct result of the foregoing acts and practices, the Defendants have received, or will receive, income,

profits and other benefits, which they would not have received if they had not engaged in the violations of the UTPCPL as described in this Complaint.

86.     In addition, 73 P.S. § 201-8(b) specifically allows the City of New Castle to bring this claim for a penalty for each violation by the Defendants.

**SECOND CAUSE OF ACTION**
**PUBLIC NUISANCE**
**(AGAINST ALL DEFENDANTS)**

87.     Plaintiff incorporates the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

88.     Defendants' conduct constitutes a public nuisance.

89.     Defendants, individually and acting through their employees and agents and in concert with each other, have intentionally, recklessly or negligently engaged in conduct or omissions which endanger or injure other property, health, safety or comfort of a considerable number of persons in the City of New Castle by their untrue, false and misleading promotion and marketing of opioids for use by residents of the City of New Castle.

90.     Defendants' marketing conduct and subsequent sale of its opioid products is not only unlawful, but has also resulted in substantial and unreasonable interference with the public health, and the public's enjoyment of its right that not to be defrauded or negligently injured.

91.     Defendants' conduct is not insubstantial or fleeting.  Indeed, Defendants' unlawful conduct has so severely impacted public health on every geographic and demographic level that the public nuisance perpetrated by Defendants' conduct is commonly referred to as "crisis" or an "epidemic".  It has caused deaths, serious injuries and a severe disruption of public peace, order and safety; it is ongoing and it is producing permanent and long-lasting damage.

92.     By reason of the foregoing, the City of New Castle has been injured and continues to be injured in that it has paid and continues to pay for long-term opioid treatment using opioids manufactured or distributed by Defendants or by other drug makers.  The City of New Castle has suffered additional damages and continues to suffer damage for the additional costs of providing and using opioids long-term to treat chronic pain.

## THIRD CAUSE OF ACTION
## UNJUST ENRICHMENT
## VIOLATIONS OF THE COMMON LAW PROHIBITION ON UNJUST ENRICHMENT
## (AGAINST ALL DEFENDANTS)

93.     Plaintiff incorporates the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

94.      Defendants have unjustly retained a benefit to the City of New Castle's detriment, and the Defendants' retention of the benefit violates the fundamental principles of justice, equity and good conscience.

95.     By illegally and deceptively promoting opioids to treat chronic pain, directly, through their control of third parties, and by acting in concert with third parties, Defendants have unjustly enriched themselves at the City of New Castle's expense.  The City of New Castle has made payments for opioid prescriptions and Defendants benefited from those payments. Because of their deceptive promotion of opioids, Defendants obtained enrichment they would not otherwise have obtained.  The enrichment was without justification and Plaintiff claims a remedy provided by law.

96.     In addition, and by reason of the foregoing, Plaintiff was injured and continues to be injured in that Defendants' ongoing concerted actions in illegally and deceptively marketing opioids caused doctors and other health care providers to prescribe and Plaintiff to pay for long-term opioid treatment using opioids manufactured by Defendants or by other drug makers,

Defendants caused and are responsible for those costs and claims. Plaintiff has suffered additional damages for the costs of providing and using opioids long-term to treat chronic pain.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment on each Cause of Action against Defendants in excess of Fifty Thousand Dollars ($50,000), jointly and severally awarding Plaintiff:

1. Compensatory damages in an amount sufficient to fairly and completely compensate Plaintiff for all damages;

2. Treble damages, penalties and costs pursuant to Consumer Fraud – Deceptive Practices, violations of 73 P.S. § 201-1 – 201-9.3 *et seq.*;

3. Certifying the class;

4. A declaratory judgment requiring Defendants to abate the public health nuisance;

5. Punitive damages;

6. Interest, costs and attorney fees; and

7. Such other and further relief as this Court deems just and proper.

LEVIN SEDRAN & BERMAN LLP

Date:   February 13, 2018

/s/ Daniel C. Levin
Arnold Levin, Esquire
Daniel C. Levin, Esquire
Charles E. Schaffer, Esquire
510 Walnut Street, Ste. 500
Philadelphia, Pa 19106
215-592-1500

*Attorneys for Plaintiff*

Case ID: 180201036

## VERIFICATION

I, _Stephanie Dean_ , hereby state that I am the plaintiff in this action, and that the facts set forth in the foregoing Class Action Complaint are true and correct to the best of my knowledge. I understand that this Verification is being made subject to 18 Pa. C.S.A. § 4904, relating to unsworn falsification to authorizations.

_2/12/18_

Date